1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **CENTRAL DISTRICT OF CALIFORNIA**

9

10 ELIZABETH MAYEN,                    )   NO. 04-05949 (Mc)
                                       )
11          Plaintiff,                 )
                                       )   MEMORANDUM OF DECISION
12      v.                             )   AND ORDER IN A SOCIAL
                                       )   SECURITY CASE
13 JO ANNE B. BARNHART,                )
   Commissioner of the                 )
14 Social Security Administration,     )
                                       )
15          Defendant.                 )
   _____)
16

17      The plaintiff, ELIZABETH MAYEN, filed the present action for

18 review of a final determination of the Commissioner of Social Security

19 (the "Commissioner") that the plaintiff is not disabled and not

20 entitled to Social Security disability insurance benefits ("DIB") and

21 supplemental security income ("SSI") disability benefits.  For the

22 reasons set forth below, the court finds that the decision of the

23 Commissioner is supported by substantial evidence.  The decision of

24 the Commissioner is, therefore, affirmed.

25                              **BACKGROUND**

26      The plaintiff filed an application for DIB and SSI disability

27 benefits under the Social Security Act (the "Act") on October 8, 2002.

28 [Administrative Record ("AR") 40-42, 173-75.]  The Commissioner denied

1  the application [AR 29-32], and at the plaintiff's request, an

2  administrative hearing was held before Administrative Law Judge

3  Brenton Rogozen (the "ALJ") on August 11, 2003 [AR 477-97.]  On

4  September 17, 2003, the ALJ filed a decision concluding that the

5  plaintiff was not under a disability as defined in the Act at any time

6  through the date of the decision. [AR 15-22.]  The Appeals Council

7  denied the plaintiff's request for review of the ALJ's decision. [AR

8  5-8.]  The decision of the ALJ stands as the final decision of the

9  Commissioner.

10       Thereafter, the plaintiff filed the present action.  The

11  plaintiff and the Commissioner have consented to proceed before a

12  United States Magistrate Judge.  The parties have entered into a Joint

13  Stipulation setting forth their arguments.

14                        **STANDARDS OF REVIEW**

15       The court must sustain the findings of the Commissioner unless:

16  (a) they are not supported by substantial evidence in the record as a

17  whole; or (b) the Commissioner applied an improper legal standard.

18  See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

19  Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

20  means "more than a mere scintilla" but less than a preponderance.

21  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

22  L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human

23  Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

24  is evidence a "reasonable mind might accept as adequate to support a

25  conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v.

26  Secretary of Health and Human Services, 803 F.2d at 1072.

27       This court must review the record as a whole and consider adverse

28  as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528,

529-30 (9th Cir. 1986).  Where evidence is susceptible of more than

one rational interpretation, the court must sustain the Commissioner's

decision.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.

1984).

## THE FIVE-STEP SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential

evaluation for determining whether a person is disabled.  First, the

Commissioner determines whether the person is engaged in "substantial

gainful activity."  If so, the Commissioner denies disability

benefits.  Second, if the person is not so engaged, the Commissioner

determines whether the person has a medically severe impairment or

combination of impairments.  If the person does not have a severe

impairment or combination of impairments, the Commissioner denies

benefits.  Third, if the person has a severe impairment, the

Commissioner determines whether the impairment meets or equals one of

a number of "listed impairments."  If the impairment meets or equals a

"listed impairment," the Commissioner conclusively presumes that the

person is disabled.  Fourth, if the impairment does not meet or equal

the "listed impairments," the Commissioner determines whether the

impairment prevents the person from performing past relevant work.  If

the person can perform past relevant work, the Commissioner denies

benefits.  Fifth, if the person cannot perform past relevant work, the

burden shifts to the Commissioner to show that the person is able to

perform other kinds of work.  The person is entitled to disability

benefits only if he or she is unable to perform other work.  See 20

C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S.

137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

\\\

**FINDINGS OF THE ALJ**

The plaintiff was born February 3, 1955. [AR 20, 40.]  The plaintiff has a seventh grade education in El Salvador [AR 16, 55, 480] and is unable to communicate in English [AR 16, 20, 478].  The plaintiff has past relevant work experience as a machine operator and housekeeper.  [AR 16.]  The plaintiff alleged that she has been unable to work since May 25, 2001,[1] because of "tail bone disc, spinal cord injury, "throat disc," stomach surgery, fibroma, and "much pain."  [AR 49.] The medical evidence generally suggests that the plaintiff's chief complaints are of left shoulder injury, cervical pain, lower extremity pain, bilateral hand and elbow pain, and psychiatric problems. [See AR 124, 136, 146-72.] The plaintiff also complained of low back pain. [AR 95, 296, 482.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR 21.]  The ALJ found that the plaintiff had medically determinable impairments consisting of left shoulder tendinitis and depression which were "severe." [AR 17.]  However, the ALJ determined that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. [AR 21.] The ALJ found that the plaintiff's allegations of inability to perform simple light work were not entirely credible. The ALJ found that the plaintiff retained the residual functional capacity to perform a significant range of light work.  More specifically, the ALJ found that the plaintiff could stand and walk up

---

[1]The plaintiff stopped working due to a lay off. [AR 16, 480-81.] At the hearing in her matter, the plaintiff testified that she felt she was no longer able to work as of September 28, 2001. [AR 482.]

1  to four hours each and sit up to six hours plus in an eight-hour

2  workday.  He found that the plaintiff could lift and carry up to

3  twenty pounds occasionally and ten pounds frequently.  Additionally,

4  the ALJ found that the plaintiff was precluded from all left non-

5  dominant above-head tasks and that she should not perform power

6  grasping or torquing.  Furthermore, the ALJ concluded that as a result

7  of the plaintiff's depression, the plaintiff would be limited to

8  simple "(or un-skilled)" work. [AR 21.] The ALJ determined that the

9  plaintiff was unable to perform her past relevant work but that

10 considering her age, even considering her lack of ability to

11 communicate in English and the lack of transferable skills, based upon

12 her residual functional capacity, and using Medical-Vocational Rule

13 202.16 as a framework for decision-making, there were a significant

14 number of jobs in the national economy which the plaintiff could still

15 perform.   Accordingly, the ALJ concluded that the plaintiff was not

16 under a disability as defined in the Act at any time through the date

17 of his decision. [AR 22.]

18                   **THE PLAINTIFF'S CONTENTIONS**

19       The plaintiff contends that the ALJ improperly evaluated the

20 plaintiff's mental condition; that the ALJ failed properly to consider

21 the State agency physician's opinion; and that the ALJ failed properly

22 to consider the treating physician's opinion.

23 **The plaintiff's mental impairment**

24 _____The plaintiff underwent psychiatric evaluation as part of her

25 workers' compensation case by Dr. Thomas Curtis on January 24, 2002.

26 [AR 213.] Dr. Curtis conducted psychological testing  and concluded

27 that the plaintiff was temporarily totally disabled and that the

28 plaintiff required psychiatric treatment. [AR 218, 221, 222.] The

1  plaintiff was prescribed psychotropic medication, and she received

2  individual and group psychotherapy as well as biofeedback by members

3  of Dr. Curtis' staff. [AR 192.]

4      The plaintiff reported improvement and learned "to put the events

5  of injury into better perspective in her life and to assist in the

6  making of better plans for her vocational future." [Id.] Nevertheless,

7  Dr. Curtis concluded that the plaintiff would likely be precluded from

8  "successful vocational rehabilitation within the foreseeable future,"

9  and he assessed that the plaintiff had become "an eligible candidate

10 for Social Security Disability benefits" when he found the plaintiff

11 to be permanent and stationary in January, 2003.[2] [AR 209.]

12     Utilizing California workers' compensation terminology,[3] Dr.

13 Curtis assessed that the plaintiff had slight to moderate impairment

14 in comprehending and following instructions; performing simple and

15 repetitive tasks; maintaining work pace; performing complex and varied

16 tasks; relating to others; influencing people; making generalizations,

17 evaluations and decision; and accepting and carrying out

18 responsibility.[4] [AR 167-68.] Dr. Curtis assessed that the overall

19 \\\

20

21     [2]There are two apparently identical permanent and stationary
   reports both dated January, 2003. One is dated January 24, 2003 [AR
22 186-212], and the other is dated January 29, 2003 [146-72], both based
   on an examination of December 5, 2002.
23

24     [3]All references herein to the California workers' compensation
   system of rating disabilities or the Schedule for Rating Permanent
25 Disabilities refer to the rating system in place prior to January 1,
   2005.
26

27     [4]Under the California Workers' Compensation rating system at the
   time of Dr. Curtis' report, the applicant's disability was rated in
28 the eight work functions listed above. Schedule for Rating Permanent
   Disabilities, 2-3.

degree of impairment was moderate, with a workers' compensation
disability rating of about fifty per cent. [AR 167.]

    Following the permanent and stationary report, Dr. Curtis saw the
plaintiff again on at least one other occasion,[5] July 24, 2003,
following which Dr. Curtis completed a questionnaire indicating
essentially that the plaintiff could not work.  Dr. Curtis indicated
that the plaintiff had poor or no ability to maintain attention in two
hour increments; work in coordination with or proximity to others;
make simple work-related decisions; complete a normal workday and
workweek without interruptions from psychologically based symptoms;
perform at a consistent pace; accept instructions and respond
appropriately to criticism from supervisors; respond appropriately to
changes in a routine work setting; deal with normal work stress;
understand and remember detailed instructions; carry out detailed
instructions; set realistic goals or make plans independently of
others; deal with the stress of skilled and semiskilled work; travel
in unfamiliar places; and use public transportation. [AR 143-44.] Dr.
Curtis also assessed that the plaintiff had marked limitations in
activities of daily living and maintaining social functioning.  Dr.
Curtis further opined that the plaintiff had repeated episodes of
deterioration or decompensation in work or work-like settings and
constant deficiencies of concentration, persistence or pace. [AR 144.]
In all other areas of work function, except in adherence to standards
\\\

\\\

_____

    [5]The plaintiff also refers to a progress report dated May 19,
2003, based upon an examination of April 9, 2003. [Joint Stipulation
at 7; AR 240.] However, the progress report of this date does not
refer to the plaintiff but to another applicant named Elva Martinez.

of neatness and cleanliness, Dr. Curtis indicated that the plaintiff's abilities were "fair" ("seriously limited but not precluded"). [AR 143-44.]

The plaintiff contends that, in assessing the plaintiff's mental impairment, the ALJ failed adequately to consider Dr. Curtis' opinion and that the ALJ failed to articulate clear and convincing reasons for rejecting Dr. Curtis' opinion.

The opinion of a treating physician is generally entitled to greater weight than the opinions of non-treating physicians.  This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than a physician who only saw the claimant on one occasion or who has never seen the plaintiff at all.  This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989).  However, if the ALJ chooses to reject the contradicted opinion of a treating physician, he must cite specific and legitimate reasons for doing so.  Where the opinion of the treating physician is uncontroverted, the ALJ must cite clear and convincing reasons for rejecting the treating physician's opinion.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ rejected Dr. Curtis' assessment citing clear and convincing reasons for doing so.  The ALJ first noted the inconsistencies between Dr. Curtis' January, 2003, permanent and stationary report and the limitations Dr. Curtis subsequently found as reported in July, 2003.  The ALJ noted that Dr. Curtis' July 24, 2003,

report of "multiple 'poor or none' 'marked' and 'constant' assessments follow his 'slight to moderate' findings in the same categories of mental functioning only 6 months prior."  The ALJ further commented that there were no treatment notes submitted by Dr. Curtis that would "explain such a dramatic decline in mental functioning despite, presumably, ongoing mental health treatment." [AR 19.]

The plaintiff, on the other hand, argues that there really is no conflict between Dr. Curtis' assessment of January, 2003, and his opinion of July, 2003. [Joint Stipulation at 6.]  The plaintiff contends that any perceived differences are due to the ALJ's failure to consider the differences in definitions under the California workers' compensation system and the Social Security system, citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573 (9th Cir. 1988). [Joint Stipulation at 5.]

In Desrosiers, the ALJ clearly misinterpreted the workers' compensation language.  Desrosiers was found to be precluded from heavy work by the workers' compensation physicians, which the ALJ incorrectly understood to mean that Desrosiers was unable to lift more than fifty pounds. Id., at 576.  However, under workers' compensation definitions, if an individual is precluded from "heavy work," it means that the individual has lost approximately fifty per cent of his pre-injury capacity for lifting, bending, stooping, pushing, pulling, climbing or other activities of comparable effort.  Schedule for Rating Permanent Disabilities, 2-14.  The term "heavy work," therefore, did not provide any estimate of the plaintiff's exertional capabilities.[6]  Thus, an individual who is precluded from heavy work,

---

[6]In contrast, 20 C.F.R. §§ 404.1567(d) and 416.967(d) define "heavy work" under Social Security as work involving "lifting no more

1  may actually be limited to sedentary work under the Social Security

2  definitions.  <u>Desrosiers</u>, 846 F.2d at 576.

3       However, unlike Desrosiers, the plaintiff in this case offers no

4  explanation as to how the definitional differences under the two

5  disability systems equates "slight to moderate" to "poor" to "none."

6  The mere fact that there is a definitional difference does not lead to

7  such an inference.

8       Under the workers' compensation system, psychiatric disability

9  was rated in the eight work functions enumerated by Dr. Curtis in his

10 January, 2003, report.  These eight work functions were rated

11 according to the degree of impairment.  The  degrees of impairment

12 were: minimal, very slight, slight, slight to moderate, moderate,

13 moderate to severe and severe.  <u>Schedule for Rating Permanent</u>

14 <u>Disabilities</u>, 2-3.  Clearly, a slight to moderate impairment does not,

15 therefore, suggest that the plaintiff is left with little or no

16 function in any given area, and even considering the effect of slight

17 to moderate impairments in all of the work functions, Dr. Curtis

18 assessed that there was overall a fifty per cent disability.

19      In comparison, Dr. Curtis' July, 2003, assessment indicates a

20 degree of disability closer to one hundred per cent with little or no

21 function in multiple areas of work functioning roughly corresponding

22 to the eight work functions previously evaluated.  Thus, the ALJ's

23 inference that there was an inconsistency between the assessment of

24 Dr. Curtis in January, 2003, compared with his assessment of July,

25 2003, was a reasonable inference. <u>Sample v. Schweiker</u>, 694 F.2d 639,

26 \\\

27 ────────────────────

28 than 100 pounds at a time with frequent lifting or carrying of objects
   weighing up to 50 pounds."

1   642 (9th Cir. 1982)(The ALJ is entitled to draw reasonable

2   inferences); see also Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir.

3   1996); Payan v. Chater, 959 F.Supp. 1197, 1203 (C.D. Ca. 1996).[7] If

4   the ALJ's interpretation of the evidence is reasonable, even where the

5   evidence is susceptible of a differing interpretation, "it is the

6   ALJ's conclusion which must be upheld." Sample, 694 F.2d at 642.

7        Having reasonably inferred that the two assessments of Dr. Curtis

8   were inconsistent, the ALJ's citing of the lack of supportive

9   documentation is likewise a clear and convincing reason for rejecting

10  Dr. Curtis' opinion.  Although it is true, as the plaintiff contends,

11  that the Commissioner routinely accepts assessments made by one-time

12  examiners who obviously cannot provide supportive treatment records,

13  in the plaintiff's case, absent supportive documentation, there is no

14  explanation for what the ALJ found to be the "dramatic decline" from

15  the slight to moderate limitations in mental functioning assessed in

16  Dr. Curtis' January, 2003, report to the report of July, 2003, in

17  which Dr. Curtis found essentially no useful functioning in many of

18  the same areas of work functioning.  Thomas v. Barnhart, 278 F.3d 947,

19  957 (9th Cir. 2002)(The ALJ rejected a statement of disability from

20  the Thomas' treating physician because there was no evidence in the

21  record to support a change from a previous opinion that the claimant

22  could work).  In fact, despite the differences in assessment between

23  _____

24       [7]The plaintiff argues that the facts in Payan are "remarkably
    similar" to her case.  However, Payan is distinguishable in that in

25  Payan, "the ALJ, purportedly based on Dr. Braverman's reports, found
    that plaintiff 'had only slight to moderate limitations'; whereas, as

26  noted above, Dr. Braverman found that plaintiff had moderate
    impairment in his ability to comprehend and follow instructions and

27  perform complex or varied tasks."  Payan, 959 F. Supp. at 1204.  Thus,
    the ALJ's finding in Payan that the plaintiff had a slight to moderate

28  impairment was not based upon substantial evidence.

1   the two reports, Dr. Curtis himself never indicated that there was a

2   change in the plaintiff's condition.  To the contrary, in a progress

3   report made to the workers' compensation carrier based upon the same

4   examination of July 24, 2003, Dr. Curtis indicated no change in the

5   plaintiff's condition or disability status, indicating as he did that

6   the plaintiff was "[f]ound to be Permanent and Stationary at a

7   moderate degree at about 50% standard level." [AR 232.]

8        Moreover, when Dr. Curtis was asked to describe the clinical

9   findings including the results of a mental status examination as

10  support for the severity of the plaintiff's impairment and symptoms,

11  Dr. Curtis merely noted that the plaintiff was oriented to time, place

12  and person; that judgment was adequate; and that impulse control was

13  intact.  However, Dr. Curtis noted that concentration was impaired and

14  that the plaintiff was withdrawn.  There were, however, no

15  observations or mental status examination findings concerning the

16  degree of impairment.  "The ALJ need not accept the opinion of any

17  physician, including a treating physician, if that opinion is brief,

18  conclusory, and inadequately supported by clinical findings."  Id.

19       The plaintiff's own testimony, moreover, does not suggest the

20  level of impairment suggested by Dr. Curtis in his July, 2003, report.

21  At the hearing in this matter, the plaintiff testified that she was

22  unable to work primarily because of her asserted physical complaints.

23  [AR 485-86.] Although the plaintiff also testified to depression and

24  nerves, she only indicated that she lost her train of thought when she

25  was talking and that she forgot things.[8] [AR 486.] While stating that

26

27          [8]When the plaintiff filed her application on October 8, 2002, she
    did not allege any psychiatric impairment, nor did she indicate that
28  she was receiving psychiatric treatment. [AR 49, 51-52.] However, in
    her pain questionnaire, the plaintiff indicated that she suffered from

1   she was no longer able to work, the plaintiff also admitted that at
2   the time she was laid off, she would have continued working if her
3   employer had called her back. [AR 481.] The plaintiff also told Dr.
4   Curtis that she was most depressed when she was laid off. [AR 220.]

5       Thus, the ALJ properly rejected the assessment of Dr. Curtis that
6   the plaintiff essentially was unable to work and the ALJ reasonably
7   concluded that the plaintiff retained the residual functional capacity
8   to perform simple, unskilled work.

9   **The State agency physician's opinion**

10       The plaintiff contends that the ALJ improperly failed to consider
11  the State agency physician's opinion that the plaintiff "is limited in
12  the use of her left upper extremity for all reaching in all directions
13  including overhead." [Joint Stipulation at 11; AR 86.] The plaintiff
14  argues that the ALJ's failure to consider this opinion violates Social
15  Security ruling 96-6p which requires that administrative law judges
16  consider the State agency physician's "findings of fact about the
17  nature and severity of an individual's impairment(s)" and "explain the
18  weight given to the opinions in their decisions."

19       The ALJ did not fail to consider the opinion or explain the
20  weight given to the State agency physician's opinion.  The ALJ noted
21  the State agency physician's opinion that the plaintiff had "limited
22  reaching in all directions of the claimant's left upper extremity."
23  [AR 17.] However, the ALJ indicated that he based his own residual
24  functional capacity assessment upon the totality of the medical

25  _____

26  depression, but the only medication she was taking was Xanax [AR 62,]
    which apparently was being prescribed by Dr. Lucero [AR 254.] When the
27  plaintiff filed her Request for Hearing in March, 2003, she was not
    taking any medication other than Ibuprofen. [AR 64.] However, in July,
28  2003, the plaintiff indicated that she had been taking psychotropic
    medications prescribed by Dr. Curtis since 2002. [AR 73.]

evidence, which he considered "virtually unanimous" that the plaintiff would be limited to a significant range of light work activity.

Moreover, the opinion of a non-examining physician, such as that of the State agency physician, standing alone, cannot constitute substantial evidence. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1042 (9th Cir. 1995). To constitute substantial evidence, the opinion of a non-examining physician must be "supported by other evidence in the record and [be] consistent with it." <u>Id.</u>, at 1041. At the hearing, the plaintiff testified that her left arm "lost all the strength," and she indicated that she could not raise her left arm up and that she could not perform any heavy lifting. [AR 495.] The medical evidence reveals multiple medical opinions concerning the plaintiff's left upper extremity condition–those of the treating physician, Dr. P. A. Lucero; those of a qualified medical examiner, Dr. Homer Williams; and those of a consultative examiner, Dr. Thomas E. Mroz. Dr. Lucero indicated in his permanent and stationary report of March 14, 2003, that the plaintiff was precluded from heavy lifting and work above shoulder level due to her left shoulder injury. [AR 115.] In contrast, in July, 2003, in response to a questionnaire in connection with the plaintiff's Social Security claims, Dr. Lucero indicated that there were <u>no</u> limitations in reaching, handling or fingering. [AR 92.] Dr. Homer Williams, the plaintiff's qualified medical examiner, reported on September 16, 2002, that the plaintiff had tendinitis of the left shoulder [AR 135], and he opined that the plaintiff had a left shoulder disability precluding heavy lifting and work above shoulder level. [AR 137.] Dr. Mroz gave no restrictions whatsoever for the shoulder. [AR 97.] In any case, there is no indication from any of these physicians that the plaintiff was limited in reaching in all

directions.  To the contrary, the reports of Dr. Lucero, Dr. Williams
and Dr. Mroz support the ALJ's conclusions concerning the plaintiff's
left upper extremity restrictions. Thus, even assuming that the State
agency physician had in fact indicated limitations in reaching in all
directions, it is not consistent with other evidence in the record and
would, therefore, not constitute substantial evidence.

**Dr. Lucero's opinion**

The plaintiff contends that the ALJ failed properly to consider
the opinion of the plaintiff's treating physician, Dr. P.A. Lucero.
The plaintiff notes first that Dr. Lucero found that the plaintiff was
temporarily totally disabled from September 28, 2001, and that "Dr.
Lucero continued to opine that Elizabeth was temporarily totally
disabled until his report of March 14, 2003." [Joint Stipulation at
13.] The plaintiff argues that the term "temporary total disability"
"is an opinion that the individual suffers from a complete or near
complete loss of earning capacity." [Id.] The plaintiff contends that
the ALJ wrongfully ignored this opinion altogether and that this
failure to articulate specific and legitimate reasons for rejecting
this opinion constitutes reversible error.  The plaintiff's arguments
are without merit.

First, 20 C.F.R. §§ 404.1527(e) and 416.927(e) provide that a
medical source opinion that a claimant is disabled is not a medical
opinion but an opinion on an issue reserved to the Commissioner.

More significantly, even if it were conceded that the plaintiff
had, in fact, been totally disabled as defined under the Social
Security Act during the period from September 28, 2001, until the
permanent and stationary date, the plaintiff was not found permanent
and stationary as of March 14, 2003, the date of the report, but

1   rather as of the date of the examination of September 17, 2002. [AR

2   101; see AR 152 (the plaintiff reported that Dr. Lucero released her

3   in September, 2002; see also AR 135.] Thus, any claimed period of

4   temporary total disability did not last a period of twelve continuous

5   months.  Therefore, the plaintiff's asserted disability did not meet

6   the twelve month duration requirement.  20 C.F.R. §§ 404.1505(a),

7   416.905 ("The law defines disability as the inability to do any

8   substantial gainful activity by reason of any medically determinable

9   physical or mental impairment which can be expected to result in death

10  or which has lasted or can be expected to last for a continuous period

11  of not less than 12 months"); see also Barnhart v. Walton, 535 U.S.

12  212, 219, 122 S.Ct. 1265, 152 L.Ed 2d 330 (2002).

13       The plaintiff next contends that the ALJ improperly ignored Dr.

14  Lucero's opinion that the plaintiff "suffers from frequent 'slight to

15  moderate' neck pain, intermittent 'slight' left shoulder pain,

16  occasional 'moderate' right hand pain, intermittent 'slight' left hand

17  pain, frequent 'slight' right elbow pain, frequent 'slight to

18  moderate' left elbow pain, intermittent 'slight' right foot pain and

19  occasional 'slight' left foot pain radiating to the knees." [Joint

20  Stipulation at 14; AR 113-14.]

21       Even assuming, however, that the ALJ found medically determinable

22  impairments to the neck, hands, elbows or feet,[9] there was no error in

23  _____

24       [9]It is not entirely clear whether the ALJ found the existence of
    a medically determinable impairment in the neck, hands, elbows or
25  feet. In his decision, the ALJ only indicated that the plaintiff
    suffered from left shoulder tendinitis and depression. [AR 17.]  If
26  these were, in fact, the only medically determinable impairments the
    ALJ legitimately found, then the plaintiff's complaints of pain in the
27  parts of the body other than the left shoulder cannot be the basis for
    any claims of disability.  20 C.F.R. §§ 404.1508, 416.908 (a
28  disability must be based on a physical or mental impairment which

1  the ALJ's failure to discuss the subjective factors of disability as

2  outlined by Dr. Lucero.

3      First, it is clear that the subjective factors of disability

4  enumerated by Dr. Lucero were based upon the plaintiff's subjective

5  allegations, which have been properly discounted by the ALJ.  The

6  plaintiff raises no issues concerning the ALJ's credibility findings.

7  "[A]n opinion of disability premised to a large extent upon the

8  claimant's own accounts of [her] symptoms and limitations may be

9  disregarded, once those complaints have themselves been properly

10 discounted."  Andrews, 53 F. 3d at 1043.

11     The plaintiff concedes that the ALJ considered Dr. Lucero's work

12 restrictions. [Joint Stipulation at 14.] Dr. Lucero, in turn,

13 indicated that the work restrictions he found were "[b]ased upon the

14 subjective factors of disability and objective factors of disability."

15 Clearly, therefore, Dr. Lucero incorporated the subjective factors of

16 disability into the work restrictions [AR 115], which, in turn, were

17 generally incorporated into the ALJ's residual functional capacity

18 assessment, except for Dr. Lucero's assessment of the plaintiff's

19 elbow restrictions, which was specifically rejected by the ALJ.

20 Inasmuch as the ALJ did not reject Dr. Lucero's assessment as to the

21 other parts of the body, the ALJ was not required to discuss and

22

23 "must result from anatomical, physiological, or psychological
   abnormalities which can be shown by medically acceptable clinical and
24 laboratory diagnostic techniques. . . . A physical or mental
   impairment must be established by medical evidence consisting of
25 signs, symptoms, and laboratory findings, not only by [an
   individual's] statement of symptoms.")
26     On the other hand, the ALJ's residual functional capacity
   assessment tends to suggest that the ALJ included limitations at least
27 to the hands and feet.  For example, the ALJ found that the plaintiff
   was limited to standing and walking up to four hours each and that she
28 was precluded from power grasping or torquing.  [AR 21.]

analyze the subjective factors outlined by Dr. Lucero.  <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(The ALJ "need not discuss all evidence presented to [him]. Rather, [he] must explain why "significant probative evidence has been rejected." <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981).

**CONCLUSION**

After careful consideration of the complaint, joint stipulation of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

**ORDER**

IT IS ORDERED that judgment be entered in favor of the Commissioner and against the plaintiff.


Dated: December 19, 2005                    /S/
                                    JAMES W. McMAHON
                                    United States Magistrate Judge